**PORTLAND AUDUBON SOCIETY, et al., Plaintiffs–Appellees,**

v.

**Bruce BABBITT,\* in his official capacity as Secretary, United States Department of Interior, Defendant–Appellant,**

and

**Northwest Forest Resource Council, et al., Intervenors–Defendants– Appellants.**

**Nos. 92–36616, 92–36617 and 92–36666.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided July 8, 1993.

Fed.R.App.P. 43(c)(1).

Ellen J. Durkee, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Michael D. Axline, Western Environmental Law Clinic, University of Oregon School of Law, Eugene, OR, for plaintiffs-appellees, Lane County Audubon Soc. and Oregon Natural Resources Council.

Victor M. Sher, Sierra Club Legal Defense Fund, Inc., Seattle, WA, for plaintiffs-appellees.

Mark C. Rutzick, Preston, Thorgrimson, Shidler, Gates & Ellis, Portland, OR, for defendants-intervenors-appellants for Northwest Forest Resource Council, et al.

Kevin Q. Davis, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for defendants-intervenors-appellants The Association of O & C Counties and Benton County.

Before: GOODWIN, SCHROEDER, and PREGERSON, Circuit Judges.

SCHROEDER, Circuit Judge:

The Secretary of the Interior, the Northwest Forest Resource Council, The Association of O & C Counties and Benton County, along with various forest products companies, appeal the district court's grant of summary judgment in favor of the Portland Audubon Society and other environmental groups (PAS) in PAS's action challenging the Secretary's decision not to supplement Timber Management Plans (TMPs) prepared between 1979 and 1983 with new information concerning the effect of those plans on the northern spotted owl. 795 F.Supp. 1489. The district court enjoined logging operations on BLM land with owl habitat pending preparation of a Supplemental Environmental Impact Statement. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 & 1292(a) and we affirm.

**I**

The district court's 1989 opinion in *Portland Audubon Soc'y v. Lujan* is published at 712 F.Supp. 1456 (D.Or.), *aff'd in part, rev'd in part*, 884 F.2d 1233 (9th Cir.1989), *cert.*

*denied*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990) (*PAS*), and contains an extensive discussion of the TMPs, the environmental impact statements (EISs) and the voluminous scientific evidence, along with a detailed description of the proceedings in this matter up to that point. *See also Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 303–04 (9th Cir.1991) (*Evans*); *Seattle Audubon Soc'y v. Robertson*, 914 F.2d 1311 (9th Cir. 1990), *rev'd*, — U.S. —, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Accordingly, we will not recount the details here.

Following this court's opinion in *Evans*, PAS in January, 1992, filed an amended complaint alleging, in part, that "the BLM's sale and destruction of habitat suitable for the northern spotted owl, and the BLM's adopting of Management strategies for the spotted owl that includes continued logging of such habitat, constitute major federal actions affecting the quality of the human environment under NEPA." PAS sought a declaration that BLM's sales of timber from spotted owl habitat without a new EIS on the effects of logging on the owl violates NEPA. It also sought an injunction prohibiting the BLM from allowing any land-altering operations on any timber sale in owl habitat awarded after January 1, 1992.

The district court granted summary judgment and an injunction in favor of PAS. The Secretary, Council and O & C Counties timely appeal.

**II**

*Standing and Ripeness*

Here, as in *Seattle Audubon Soc'y v. Espy*, 998 F.2d 699 (*Espy*), also decided today, the government asserts that *Lujan v. Defenders of Wildlife*, — U.S. —, —, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) ("*Defenders*") and *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 890–94, 110 S.Ct. 3177, 3189–92, 111 L.Ed.2d 695 (1990) ("*National Wildlife*") establish a new, stricter burden on plaintiffs to establish with specificity an injury-in-fact caused by a challenged government action. The position is no stronger in this case than in that one.

The record before us contains several declarations from individual members of the plaintiff environmental organizations. These declarations indicate a pattern of continuous use of spotted owl habitat by individual members on BLM land and that individual declarants have observed and wish to continue to observe owls on that land. Without doubt, the continued viability of the northern spotted owl is tied directly to the continued existence of the old-growth forests which comprise its habitat. Therefore, because the declarations supplied by plaintiffs indicate individual members have used and will continue to frequent these old-growth forests on BLM land, plaintiffs have demonstrated injury-in-fact. *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1513–18 (9th Cir. 1992); *compare Defenders,* —— U.S. at ——, 112 S.Ct. at 2138; *see also Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986).

Moreover, the TMPs at issue necessarily drive the location and volume decisions which eventually culminate in a particular sale site being offered at auction. *See Lane County Audubon Soc'y v. Jamison,* 958 F.2d 290, 293–94 (9th Cir.1992); *PAS,* 884 F.2d at 1234–35. The BLM, operating pursuant to the TMPs, proposes to sell 750 million board feet of timber per year, a substantial quantity of which is in owl habitat. The BLM admits that experts believe that *any* further loss of habitat could severely compromise the ability of the owl to survive as a species. Thus, the continued logging of old-growth forests on BLM land in the absence of NEPA compliance will cause harm to the owls and to plaintiffs, who will no longer be able to observe and study them.

Finally, the action challenged here is a final agency decision not to supplement the EISs with new information relating to the effects of logging on the northern spotted owl. Thus, the injury-in-fact is clearly redressable by the district court's enjoining the Secretary to comply with the requirements of NEPA. Moreover, the decision is ripe for review now rather than when individual sales are announced because, to the extent these TMPs pre-determine the future, the Secretary's failure to comply with NEPA represents a concrete injury which would undermine any future challenges by plaintiffs. *See Idaho Conservation League,* 956 F.2d at 1514–16.

Accordingly, we agree with the district court's conclusion that "there is no basis for the BLM to argue that no final action of the BLM has been taken so as to be challenged by plaintiffs or to argue that plaintiffs have not demonstrated standing to allow the court to review the final action of the BLM."

### NEPA Violations

The government in essence contends that its 1987 decision not to prepare a supplemental EIS was not arbitrary and capricious in light of the information available at that time. In addition, the Secretary contends that legal developments occurring after 1987 relieved the BLM from subsequently incurring an obligation to prepare an EIS. The record amply supports the district court's conclusion that the BLM's decision not to supplement the EISs was arbitrary and capricious.

The BLM made various land-use decisions in its TMPs prepared from 1979 to 1983. These decisions involved a course of action that was to be taken over a ten-year period. At the very least, the body of scientific evidence available by 1987 concerning the effect of continued logging on the ability of the owl to survive as a species raised serious doubts about the BLM's ability to preserve viability options for the owl if logging continued at the rates and in the areas authorized by the TMPs. *See Espy, supra,* (filed concurrently with this opinion). A supplemental EIS should have been prepared because the scientific evidence available to the Secretary in 1987 raised significant new information relevant to environmental concerns, information bearing on the impacts arising from the ongoing implementation of the land use decisions driven by the original TMPs. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 370–74, 109 S.Ct. 1851, 1857–59 (1989) (NEPA cases generally require supplemental statements when "remaining government action would be environmentally 'significant.'") (internal quota-

tions and citations omitted); *PAS,* 712 F.Supp. at 1462.

Congress temporarily relieved the BLM from its obligation to comply with applicable environmental laws when it enacted Section 314 of the fiscal year 1989 Interior Appropriations Act. *See* Department of the Interior and Related Agencies Appropriations Act, 1989, Section 314, Pub.L. No. 100–446, 102 Stat. 1774, 1825 (1988) (Section 314). Section 314 placed certain limitations on judicial review but required BLM to go forward with new plans. *See Evans,* 952 F.2d at 303–04. Section 314 has now expired and NEPA again applies. *See id.* The old plans never complied with NEPA and the new plans have not yet been prepared. The Secretary failed to act and now the temporary protections afforded by Congress have run out. *See id.*

Alternatively, the Secretary argues that this court's holding in *Headwaters, Inc. v. BLM,* 914 F.2d 1174, 1178–80 (9th Cir.1990), *reh'g denied,* 940 F.2d 435 (1991), supports the conclusion that the BLM's decision not to supplement the EISs was reasonable. This argument is unpersuasive. *Headwaters* was an action challenging the BLM's decision not to prepare a supplemental EIS for a site-specific timber sale after the discovery of a single pair of owls nesting in the sale area. *Headwaters,* 914 F.2d at 1176. *Headwaters* held a supplemental EIS was not necessary for the single site-specific sale. Here, however, plaintiffs are challenging the Secretary's decision not to supplement the EISs underlying the TMPs that control myriad land use decisions with new information relating to the possible extinction of a species through the systematic implementation of the BLM's timber-sale program throughout its lands. Under *Lane County* and *Evans,* a supplemental EIS is required. In *Lane County,* we said that "[t]he impact of each individual sale on owl habitat cannot be measured without reference to the management criteria established in the [Timber Management Plans] and the Jamison Strategy." 958 F.2d at 294. The existing Timber Management Plans do not adequately address the impact of the individual planned timber sales on the survival of the northern spotted owl subspecies. As the district court observed,

recent developments in the scientific community since 1987 "have only confirmed the need for a Supplemental Environmental Impact Statement." *See, e.g., Espy.*

In short, the record supports the district court's conclusion that "Congress has withdrawn its protection" and there are "no defenses to excuse the BLM from complying with NEPA."

### *Propriety of Injunctive Relief— O & C Lands Act*

▉ The Secretary and certain Oregon and California (O & C) counties contend that the district court erred in issuing an injunction which prevents the BLM from selling a minimum of 500 million board feet of timber per year as directed by the Oregon and California Lands Act (O & C Act), 43 U.S.C. § 1181a. We find that the plain language of the Act supports the district court's conclusion that the Act has not deprived the BLM of all discretion with regard to either the volume requirements of the Act or the management of the lands entrusted to its care. Because there does not appear to be a clear and unavoidable conflict between statutory directives, we cannot allow the Secretary to "utilize an excessively narrow construction of its existing statutory authorizations to avoid compliance [with NEPA]." *See Jones v. Gordon,* 792 F.2d 821, 825–26 (9th Cir.1986); *see also Evans,* 952 F.2d at 301–02 (Forest Service must comply with the provisions of both the NFMA and NEPA). The district court correctly rejected any contention that timber sales in these counties are exempt from NEPA. This is not a tenable position because NEPA, passed after the O & C Act, applies to all government actions having significant environmental impact, even though the actions may be authorized by other legislation. That is the teaching of *TVA v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). *See also Marsh,* 490 U.S. at 370–74, 109 S.Ct. at 1857–59. Accordingly, we find that the district court's injunction is not based on either erroneous legal principles or an abuse of discretion.

▉ Finally, we are unmoved by the Secretary's claim that it would be futile to prepare supplemental EISs for the TMPs when

its new Resources Management Plans and accompanying EISs will address all the relevant information. These long-awaited plans were originally due in 1990. Then, Congress enacted Section 314 to insulate the BLM from legal challenges to the old TMPs so that the BLM could get on with the expeditious preparation of the new plans. *See Evans,* 952 F.2d at 303–04; *PAS,* 884 F.2d at 1237–39. In spite of all this, the new plans are still not complete. Thus, if we were to allow the BLM to continue to log in owl habitat pursuant to the old plans, pending finalization of the new Resource Management Plans, we would sanction the BLM's deliberate, protracted refusal to comply with applicable environmental laws, and countenance irreparable harm to plaintiffs.

The judgment of the district court is AFFIRMED.