WALLACH, Circuit Judge,
dissenting.
The court errs when it finds Scott I and Precision Pine reconcilable and Scott I inapplicable in this case. See Majority Op. at 1374-76. These cases are irreconcilable, and therefore this court should take the ease en bane to resolve the conflict the two cases present or the panel should hold that Scott I is the earlier, and therefore precedential, decision over Precision Pine.
In Scott Timber Co. v. United States, 333 F.3d 1358 (Fed.Cir.2003) (“Scott I”), Appellant Scott Timber sought review of the Court of Federal Claims’s (“Claims Court”) grant of summary judgment which determined that the Forest Service did not breach Scott Timber’s eleven timber sales contracts when it suspended performance on the contracts to protect the marbled murrelet, a threatened species. Id. at 1360. We held, inter alia, that the text of clause C6.01 expressly granted the Forest Service the authority to suspend the contract. Id. at 1366. We also found that “clause C6.01 does not authorize the Forest Service to indefinitely or permanently suspend the contracts.” Id. at 1368 (internal quotation omitted). We articulated the proper course of action: “Therefore, in order for the prolonged suspensions in this case to be considered a breach of the C6.01 contracts, the court must determine whether the suspensions were reasonable.” Id. (internal quotation omitted). Ultimately we remanded the determination of reasonableness to the Claims Court, noting that “[b]ecause the reasonableness issue is intensely factual, this court finds that the [Claims Court] erred when it determined the suspensions were reasonable on summary judgment.” Id. at 1369.
Scott I, albeit sub silentio, fully addressed the duty of good faith and fair dealing. Scott Timber originally argued before the contracting officer “that the Forest Service did not possess the contractual authority to suspend any of the contracts at issue for an extended and indefinite period of time, and that the Forest Service’s continued suspension of the contracts therefore violated the government’s duty not to unduly hinder Scott’s performance of the contracts.” Scott Timber Co. v. United States, 40 Fed.Cl. 492, 499 (1998), rev’d 44 Fed.Cl. 170 (1999).[1]
The Claims Court noted that Scott Timber’s arguments in support of summary judgment were “virtually identical” to *1380 those raised before the contracting officer. Id. Scott Timber moved for summary judgment, arguing “that the Forest Service’s suspension of [the] contracts amounts to a breach of the government’s implied duty to cooperate and not hinder plaintiffs performance of the contracts.” Id. The Claims Court noted that Scott Timber correctly argued that “the Forest Service was under an implied duty to act reasonably in exercising its discretion under Clause C6.01.... ” Id. at 502. The Claims Court ultimately denied Scott Timber’s motion for summary judgment, id. at 507, and granted summary judgment to the government, Scott Timber, 44 Fed.Cl. at 183.
Scott Timber appealed to this court challenging the Claims Court’s decisions. Brief of Appellant, Scott Timber Co. v. United States, 333 F.3d 1358 (Fed.Cir. 2003) (No. 02-5142), 2002 WL 32817253. On appeal, Scott Timber specifically argued that breach of the implied duties occurred and that reasonableness was the proper standard for measuring the breach. It stated:
[The contract language] does not mean that the [Forest Service] can modify or cancel a contract based on information that it had at the time of bidding but which it chose not to disclose or that the [Forest Service] can mislead the contractor by making representations that it has complied with certain procedures in preparing the contract specifications when it had not. Such an interpretation would be in direct conflict with the [Forest Service’s] implied obligation of good faith and fair dealing as well as its affirmative duty not to mislead its contractors.
Id. at *27 (emphasis added). Scott Timber contended that “the [Forest Service’s] suspension of Scott’s contracts was unreasonable ... [and] any unreasonable delay by the [Forest Service] in gathering facts in order to determine whether to modify, cancel, or go forward with the contracts constituted a breach of the [Forest Service’s] implied duty of cooperation.” Id. at *37. Scott Timber also argued that the Forest Service’s failure to follow the time periods for action set forth in the Endangered Species Act was evidence of unreasonableness sufficient to show “a breach of the implied duties to cooperate and not to hinder the other party’s performance.” Id. at *40. Scott Timber’s Reply Brief also emphasized the implied duties. Scott argued that the contract language “cannot be read in a vacuum as the government suggests but must be read in light of the [Forest Service’s] implied duty of good faith.” Reply Brief of Appellant, Scott Timber Co. v. United States, 333 F.3d 1358 (Fed.Cir.2003) (No. 02-5142), 2003 WL 24031963.
While Scott I focused on the reasonableness of the government’s actions, the history of the case demonstrates that the purpose for discussing reasonableness was as a measure for the type of breach of implied duties claimed by Scott Timber.
More recently, in Precision Pine & Timber, Inc. v. United States, 596 F.3d 817 (Fed.Cir.2010), we revisited the same contractual provisions in a different procedural posture. Fourteen contracts were awarded to Precision Pine & Timber, Inc. (“Precision Pine”) between June 1991 and July 1995. Id. at 821. In August 1995, these contracts were suspended when a federal district court ordered the Forest Service to consult the U.S. Fish and Wildlife Service about the impact on the Mexican spotted owl of harvesting timber. Id. at 819-20. Precision Pine subsequently brought suit at the Claims Court, which found that the government had breached some, but not all, of the provisions of its contracts. Id. at 823-24. We reiterated that clause CT6.01 expressly granted the Forest Service the authority to suspend *1381 the contract. Id. at 828-29. We also held, inter alia, that the Forest Service’s actions did not breach any implied duty of good faith and fair dealing. Id. at 830. We determined in Precision Pine that there was no breach of the implied duty of good faith and fair dealing, because “the Forest Service’s actions during these formal consultations were (1) not ‘specifically targeted,’ [at a benefit of Precision Pine’s contract] and (2) did not reappropriate any ‘benefit’ guaranteed by the contracts, since the contracts contained no guarantee that the Precision Pine’s performance would proceed uninterrupted.” Id. at 829.
Both Scott I and Precision Pine articulate a standard to be applied with regards to the implied duty of good faith and fair dealing in the context of the relevant contract provision, and the two are squarely opposed. The majority states that Scott I and Precision Pine are reconcilable because Scott I’s timber contracts were suspended, after the expiration of a temporary restraining order, “under contract provision 06.01(a) ... to prevent serious environmental degradation or resource damage,” whereas Precision Pine’s timber contracts were suspended pursuant to the “court order” clause of the contracts. Majority Op. at 1374-75.[2]
This is a distinction without a difference. We cannot reconcile these cases based on whether or not the suspension is pursuant to a court order because federal agencies, like the Forest Service, are required by statute to suspend affected timber sales under these circumstances. 16 U.S.C. § 1536(d).[3] In other words, the facts of this ease and other similar eases render the timber sales automatically suspended without regard to how the suspensions were initiated; in some cases there may be a court order, in some cases not, but federal agencies are bound by statute to suspend in either situation.[4]
Additionally, factually, the present case parallels Scott I not Precision Pine. The suspension of the contracts at issue was initially pursuant to a district court order but then was pursuant to no court order at all, but pending litigation in a separate and unrelated case. See Majority Op. at 1370 (“However, Forest Service continued the suspension of the Jigsaw and Whitebird contracts due to litigation initiated on *1382 March 22, 2001 and titled Umpqua Watersheds, Inc. v. U.S. Forest Service, No. 01-399 (D.Or. Mar. 22, 2001).”). Precision Pine, on the other hand, suspended pursuant to a court order. See id. at 1374. Scott I suspended pursuant, initially, to a court order, and then pursuant to no court order at all. See id. at 1374.
The correct inquiry under clause C6.01, as stated in Scott I, is to “determine whether the suspensions were reasonable,” Scott I at 1368 (internal quotation omitted), regardless of the sub-provisions those suspensions invoked.
As a result, we are required to seek en banc resolution or to follow the holding in Scott I, our earlier and therefore prece-dential decision.[5] The panel has rejected both of these options; I respectfully dissent.

. In Precision Pine, we noted that both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing. Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 820 n. 1 (Fed.Cir.2010).

. Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer:
(a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;
(b) To comply with a court order, issued by a court of competent jurisdiction....
J.A. at 67-68, 85, 103.

. d) Limitation on commitment of resources. After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2).
16 U.S.C. § 1536(d).

.In Precision Pine, we noted: "While such consultations are taking place, § 7(d) of the [Endangered Species Act] prohibited the Forest Service from making any 'irreversible or irretrievable commitment of resources’ during the consultation process. 16 U.S.C. § 1536(d).” Precision Pine, 596 F.3d at 821. "The Ninth Circuit further explained that pursuant to its decision in Lane County Audubon Society v. Jamison, 958 F.2d 290 (9th Cir.1992), timber sales were ‘per se irreversible and irretrievable commitments of resources under section 7(d) [of the ESA], and thus could not go forward during this consultation period.’ ” Id. at 822 (quoting Pac. Rivers Council v. Thomas, 30 F.3d 1050, 1057 (9th Cir.1994)).

. See Newell Cos., Inc. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc. Where there is a direct conflict, the precedential decision is the first.”) (internal citation omitted); see also Preminger v. Sec'y of Veterans Affairs, 517 F.3d 1299, 1309 (Fed. Cir.2008) ("A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits en banc."); cf. Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc., 651 F.3d 1355, 1363 (Fed.Cir.2011) ("Even if Leviton's reading of the import of that statement were correct, this would not be a direct conflict of panel opinions as is necessary to invoke this court's rule of precedence.”).