**SIERRA CLUB, ILLINOIS CHAPTER, a California Not–for–Profit Corporation; South Corridor Against the Tollway, Inc., an Illinois Not–for–Profit Corporation; Environmental Law and Policy Center of the Midwest, an Illinois Not–for–Profit Corporation; and Business and Professional People for the Public Interest, an Illinois Not–for–Profit Corporation, Plaintiffs,**

v.

**U.S. DEPARTMENT OF TRANSPORTATION, Federico Pena, Secretary, U.S. Department of Transportation; Federal Highway Administration; Rodney Slater, Administrator, Federal Highway Administration, Michael A. Cook, Illinois Division Administrator, Federal Highway Administration; Kirk Brown, Secretary, Illinois Department of Transportation; and Julian D'Esposito, Chairman, Illinois State Toll Highway Authority, Defendants.**

No. 96 C 4768.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1997.

Robert Louis Jones, Jr., Business & Professional People for the Public Interest, Howard Alan Learner, Robert Scott Michaels, Environmental Law & Policy Center, Chicago, IL, for plaintiffs.

Matthew David Tanner, United States Attorney's Office, Chicago, IL, Paul W. Schroeder, Vicki A. O'Meara, Jones, Day, Reavis & Pogue, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

The Illinois chapter of Sierra Club ("Sierra Club") and several other not-for-profit corporations (collectively "plaintiffs") sue a number of federal and state transportation agencies and officials (collectively "defendants"), alleging that defendants have failed to comply with the National Environmental Policy Act ("NEPA") (Count I), 42 U.S.C. §§ 4321–4370, and section 4(f) of the Transportation Act ("section 4(f)") (Count II), 49 U.S.C. § 303, in the planning of a 12.5 mile new toll highway ("tollroad") in Will County, Illinois.[1]

---

1. The parties have stipulated to a dismissal of Count III, which asserts a claim under the Clean Air Act.

Plaintiffs seek declaratory judgment that the Federal Highway Administration's ("FHWA") approval of the project was unlawful. Plaintiffs also seek remand of the case for further review by FHWA. The parties have filed cross-motions for summary judgment.

## BACKGROUND

The following facts are undisputed except where otherwise noted. The proposed tollroad is a 12.5 mile multi-lane, divided highway that would extend Interstate 355 from its current southern terminus at Interstate 55 near Bolingbrook, Illinois to Interstate 80 near New Lenox, Illinois, about 25 miles southwest of Chicago. Pl. 12(M) ¶ 19. The tollroad would pass through Will County and parts of suburban Cook and DuPage Counties. *Id.*

Construction of the tollroad would have some impact on wetlands, forest preserve areas, wildlife habitats, farmland, wildlife migration, runoff, noise, and air quality. *Id.* ¶ 21; Def. 12(N)(3)(a) ¶ 21. The tollroad would also affect numerous natural, scenic and historical sites, such as the Keepataw Forest Preserve, Black Partridge Forest Preserve, Lustron House, the Illinois and Michigan Canal, Centennial Trail, and Lamont Woods Forest Preserve. *Id.* ¶ 22. The parties dispute the extent of any direct and indirect harm that would result from the construction of the tollroad.

NEPA and section 4(f) require an environmental impact statement and a section 4(f) evaluation of projects such as the tollroad. On July 26, 1994, FHWA and the Illinois Department of Transportation ("IDOT") completed a draft environmental impact statement and section 4(f) evaluation ("draft impact statements"). *Id.* ¶ 23. FHWA and IDOT circulated the draft impact statements for public comment and received numerous responses. *Id.*

Several of the responses raised questions about the draft impact statements' discussion of alternatives to construction and of the impact of the proposed construction. *Id.* The parties dispute the extent to which the final environmental impact statement and section 4(f) evaluation ("final impact statement") corrected any deficiencies noted by the comments and whether the final impact statement complies with NEPA and section 4(f).

In June 1995, IDOT and FHWA released a supplement to the draft impact statements. *Id.* ¶ 24. IDOT and FHWA received comments on the supplement that raised questions about the statements' treatment of alternatives to construction and the impact of the proposed construction. *Id.* The parties dispute the extent to which the final impact statement incorporated the concerns reflected in the public comments.

In February 1996, IDOT and FHWA issued the final impact statement. Def. 12(M) ¶ 15. It states that the purpose of the tollroad is "to provide a north/south transportation corridor linking Interstate Route 55 and Interstate Route 80 thereby providing a more efficient and better balanced transportation system that addresses existing and projected transportation demands within Will County and the region." *Id.* ¶ 17. In particular, the final impact statement identifies existing transportation problems such as the need to: (1) improve local travel; (2) accommodate increasing freight demand; (3) relieve congestion at critical locations on the interstate system; (4) provide a north-south transportation corridor; (5) accommodate shifting locations of employment; and (6) enhance community linkage. *Id.* ¶ 18. The final impact statement also asserts that the tollroad would meet projected increased transportation demands. *Id.* ¶ 26.

Plaintiffs deny that any evidence exists to support the final impact statement's claims as to existing needs and argue that projected needs are improperly based on population forecasts that assume construction of the tollroad. Pl. 12(N)(3)(a) ¶¶ 19–27. Plaintiffs point out, and defendants admit, that defendants used a single unvarying land use, population and employment forecast for analyzing all alternatives, including the no action alternative. Pl. 12(M) ¶ 39. The forecast assumes transportation facilities will be developed to meet the needs of an increasing population. *Id.* ¶ 40; Def. 12(N)(3)(a) ¶ 40. Thus, plaintiffs argue that the final impact statement's discussion of alternatives to con-

struction, Def. 12(M) ¶ 30, was not legally sufficient. Pl. 12(N)(3)(a) ¶ 30; Pl. 12(N)(3)(b) ¶¶ 1–7. Moreover, plaintiffs assert that the analysis of the environmental impact of construction, Def. 12(M) ¶¶ 58, 68, was not legally sufficient. Pl. 12(N)(3)(a) ¶¶ 30, 58, 68.

On April 16, 1996, FHWA approved the final impact statement in its Record of Decision ("FHWA's decision"). Pl. 12(M) ¶ 26. On May 3, 1996, plaintiffs and several other organizations formally requested reconsideration of FHWA's decision. *Id.* ¶ 27. FHWA denied reconsideration in a letter dated May 8, 1996. *Id.*

The Northeastern Illinois Planning Commission is the region's official land use and demographic forecasting agency; its earlier population and employment estimates for the tollroad corridor are expressly relied on in the final impact statement. *Id.* ¶ 28. In June 1996, the Northeastern Illinois Planning Commission publicly released a draft document entitled "I–355 Heritage Corridor Cumulative Impact Assessment". *Id.;* Def. 12(N)(3)(a) ¶ 28. The Northeastern Illinois Planning Commission draft report suggests that population and employment estimates in its previous reports underestimated the growth that would occur in Will County following construction of the tollroad. *Id.* ¶ 29. In response to this report, plaintiffs submitted a second request for reconsideration to FHWA. Pl. 12(M) ¶ 31. FHWA denied that request on July 3, 1996. *Id.* ¶ 32. Plaintiffs now seek review of FHWA's decision under the Administrative Procedure Act.

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the record indicates there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1209 (7th Cir.1993). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Tran-*

*sco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992). This case is particularly ripe for summary judgment, as the administrative record sets forth all facts necessary for a decision.

▮ The standard of review in this case is narrow. Under the Administrative Procedure Act, this court can set aside FHWA's decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). This court cannot "substitute its judgment for that of the agency." *Sierra Club v. Marita,* 46 F.3d 606, 619 (7th Cir. 1995) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)). Moreover, the burden of proof is on the plaintiffs to demonstrate that FHWA's decision was improper. *Id.* Nonetheless, deference does not "shield [an agency] action from a thorough, probing, in-depth review." *Id.* (quoting *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823). An agency violates the Administrative Procedure Act if it relies on factors Congress did not intend for it to consider, fails to examine an important aspect of the problem, offers an explanation for its decision that contradicts the evidence before the agency, or is so implausible that it cannot be attributed to a product of agency expertise. *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)).

## II. STANDING

▮ Defendants contend plaintiffs lack standing to bring this suit. In order to have standing, plaintiffs must demonstrate "the actual or imminent invasion of a concrete and particularized legally-protected interest (an 'injury in fact'), a causal connection between the defendant's actions and the injury, and a likelihood that the injury is redressable by a favorable court decision." *Id.* at 611 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992)). Defendants contend plaintiffs have failed to show an injury in fact because they have not shown how their members will be injured if relief is not granted.

In response, plaintiffs submit ten affidavits from members of their organizations asserting that the proposed tollroad would harm their use and enjoyment of the land. These assertions are sufficient to show an imminent injury in fact. *Id.* (the Sierra club's use and enjoyment of the land creates a concrete and legally cognizable claim; the Sierra Club has standing on behalf of its members) (citing *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972); *Hunt v. Washington State Apple Advertising Commn.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). As defendants do not contest the other elements of the standing test, dismissal on jurisdictional grounds is unwarranted.

## III. THE NATIONAL ENVIRONMENTAL POLICY ACT

NEPA represents a broad commitment to protect the environment. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 348, 109 S.Ct. 1835, 1844, 104 L.Ed.2d 351 (1989). To meet this commitment, NEPA dictates a set of procedures that requires agencies to disseminate all relevant environmental information and to take a "hard look" at the environmental consequences of any major federal action. *Id.* at 350, 109 S.Ct. at 1845–46.

The primary vehicle for the "hard look" is the environmental impact statement. *City of Angoon v. Hodel,* 803 F.2d 1016, 1020 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 148 (1987). The impact statement must "rigorously explore and objectively evaluate all reasonable alternatives" to the proposed action. 40 C.F.R. § 1502.14(a). Moreover, it must describe the environmental impact of the proposed action. 40 C.F.R. § 1502.16. NEPA prescribes procedures but does not dictate any particular substantive outcome. *Robertson,* 490 U.S. at 350, 109 S.Ct. at 1845–46.

Plaintiffs argue that the final impact statement does not satisfy NEPA's requirements for two reasons. First, plaintiffs assert that the final impact statement does not adequately consider possible alternatives to construction of the tollroad. Second, plaintiffs allege the final impact statement does not adequately consider the environmental consequences of the tollroad.

## A. DISCUSSION OF ALTERNATIVES

Plaintiffs argue that the final impact statement's analysis of alternatives is inadequate because: (1) the stated purpose of the project is so narrow that only the tollroad could satisfy it; (2) there is no rational basis for analyzing any alternatives to the tollroad; and (3) the final impact statement's rejection of alternatives is too brief. While plaintiffs' first argument is not persuasive, their other two allegations are convincing.

With respect to the first argument, plaintiffs claim an agency cannot define its objectives so narrowly that only the proposed action satisfies the objectives. Otherwise, the agency could circumvent NEPA's requirement that an agency undertake a careful consideration of alternatives. *See, e.g., Citizens Against Burlington, Inc. v. Busey,* 938 F.2d 190, 196 (D.C.Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

Plaintiffs argue that some of the stated objectives in the final impact statement are excessively narrow. For example, the final impact statement asserts that the project's objectives include: (1) providing a "north-south transportation corridor linking Interstate Route 55 and Interstate Route 80", and (2) completing a project that has been "an element of regional and county transportation plans for over thirty years." HY 3–01310–11. Plaintiffs are correct that these goals could only be satisfied by the proposed tollroad.

Defendants respond that the final impact statement also relies on broader objectives when analyzing and ultimately dismissing various alternatives to construction. The final impact statement relies on objectives such as the need to: (1) improve local travel; (2) accommodate increasing freight demand; (3) relieve congestion at critical locations on the interstate system; (4) provide a north-south transportation corridor; (5) accommodate shifting locations of employment; and (6) enhance community linkage. Def. 12(M) ¶ 18. Numerous alternatives could satisfy

some of these objectives. For example, a rail system could alleviate many of the identified problems to some degree. The final impact statement simply concludes that such alternatives do not meet the objectives as well as the tollroad. *Id.* Given that the rejection of alternatives was based in large part on these broader and more general objectives, this court cannot conclude that the final impact statement's description of objectives is excessively narrow.

■ Plaintiffs' second argument is that even if the final impact statement's description of the project's purposes is not excessively narrow, the general objectives upon which defendants rely are not supported by the available evidence. As a result, plaintiffs argue that there was no rational basis for analyzing alternatives to the tollroad. Specifically, plaintiffs point out that defendants relied on a single population forecast and that the forecast was used to analyze the build *and* no-build scenarios.

■ Plaintiffs' argument is persuasive. Highways create demand for travel and expansion by their very existence. *Swain v. Brinegar,* 517 F.2d 766, 777 (7th Cir.1975); Def. 12(M) ¶ 86. However, the final impact statement in this case relies on the implausible assumption that the same level of transportation needs will exist whether or not the tollroad is constructed. In particular, the final impact statement contains a socioeconomic forecast that assumes the construction of a highway such as the tollroad and then applies that forecast to both the build and no-build alternatives. The result is a forecast of future needs that only the proposed tollroad can satisfy. As a result, the final impact statement creates a self-fulfilling prophecy that makes a reasoned analysis of how different alternatives satisfy future needs impossible.

■ Defendants respond that they unsuccessfully attempted to implement the kind of study suggested by plaintiffs and that such a study was not possible. HY 1–01160. However, when there is incomplete or unavailable information as to the impact of a proposed action, and that information is essential to make a reasoned choice among alternatives,

NEPA requires an agency to make clear in the final impact statement that the study was not undertaken and that there are reasons the study was not undertaken. 40 C.F.R. § 1502.22. Here, unlike a case such as *Marita,* 46 F.3d at 623 (7th Cir.1995), the final impact statement does not indicate that this information is missing or that obtaining this information is infeasible or exorbitantly expensive.

NEPA, of course, does not require an agency to use the best scientific methodology available. *Id.* Thus, this court cannot conclude, as plaintiffs urge, that the final impact statement must contain a socioeconomic forecast that reflects the growth inducing effect of the tollroad. Rather, this court merely holds that information about the growth inducing impact of tollroad construction is crucial to a reasoned conclusion as to alternatives and that the final impact statement was at least required to explain in some meaningful way why such a study was not possible. 40 C.F.R. § 1502.22; *cf. Laguna Greenbelt, Inc. v. U.S. Dept. of Transp.,* 42 F.3d 517, 526–27 (9th Cir.1994) (suggesting that a final impact statement cannot rely on a single socioeconomic forecast unless the statement relies on existing needs or explains why an alternative study is not possible); *Seattle Audubon Society v. Espy,* 998·F.2d 699, 704 (9th Cir.1993) (an impact statement, which did not address in any meaningful way the uncertainties of the evidence it relied on, must undertake further study or explain why such study is not necessary or feasible). *See generally,* Dinah Bear, *Using the National Environmental Policy Act to Protect Biological Diversity,* 8 Tul. Envtl. L.J. 77, 93 (1994) ("[t]he requirements of Section 1502.22, which have received little attention since the controversial 'worst case' amendment of 1986, should be used in the event of new and evolving scientific theories"). Accordingly, the final impact statement does not adequately justify its reliance on projected needs and thus fails to observe procedures required by law. 5 U.S.C. § 706(2)(D). Moreover, FHWA's decision, which does not require defendants to produce an appropriate socioeconomic forecast or to explain adequately why such a forecast is not possible,

was arbitrary and capricious. 5 U.S.C. § 706(2)(A).

■ Defendants respond that even if the final impact statement should not have relied on a single population forecast, the tollroad still is the most effective way to satisfy *existing* transportation needs. Indeed, a reliance on existing needs is legally sufficient, even if the analysis of future needs is flawed. *Laguna*, 42 F.3d at 526; *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 442 (5th Cir.1981); *National Wildlife Federation v. Lewis*, 519 F.Supp. 523, 533–34 (D.Conn. 1981).

Plaintiffs reply that there is no evidence to support defendants' assertions as to current needs. Defendants identify six current needs, including the need to: (1) improve local travel; (2) accommodate increasing freight demand; (3) relieve congestion at critical locations on the interstate system; (4) provide a north-south transportation corridor; (5) accommodate shifting locations of employment; and (6) enhance community linkage. Def. 12(M) ¶ 18.

■ With respect to local travel and the need for community linkage, the final impact statement asserts that the growing regional population needs another way to cross the Des Plaines River because of increased travel times on local roads. Def. 12(M) ¶¶ 19, 23. However, plaintiffs correctly point out that the final impact statement contains no analysis that indicates how or to what extent the tollroad will improve travel times. Moreover, the claim that local travel times need to be improved is inconsistent with defendants' claim that the tollroad does not depend on current road congestion in Will County for its existence. Def. Resp. to Pl. 12(N)(3)(b) ¶ 1. Finally, FHWA itself stated that, "if [the tollroad is] going to reduce travel time then additional documentation would be needed in the final impact statement to support that claim." HY–1–01412. The final impact statement does not contain any such documentation, so there is no evidence of a need to improve local travel or enhance community linkage, and there is no evidence that the tollroad will alleviate any local transportation problems that do exist. Because this essential information is absent, the final impact statement does not provide a basis for analyzing alternatives as to these current needs. 40 C.F.R. § 1502.14.

With respect to regional transportation, the need for a north-south corridor, and the need to accommodate shifting locations of employment, defendants have provided evidence of a substantial increase in the number of jobs in suburban areas and a concomitant increase in vehicular trips to those locations. HY 3–01312–13. However, plaintiffs correctly point out that the final impact statement fails to analyze how and to what extent the tollroad would correct this problem. As mentioned above, FHWA has acknowledged that additional documentation is needed in order to demonstrate that the tollroad will improve travel times. This information is essential to determining whether the tollroad, as opposed to various alternatives, will meet current needs. 40 C.F.R. § 1502.14.

With respect to freight demands, plaintiffs correctly point out that this need is supported by a chart that shows national highway trends but fails to identify any needs in northeastern Illinois. Moreover, the final impact statement does not explain how the tollroad would alleviate any excessive freight demands that do exist. The final impact statement fails to explain why such a study, which is essential to determining whether the tollroad will meet current needs, was not undertaken. Accordingly, this justification for the tollroad is also legally insufficient. *Id.*

Without justifying these current needs and without justifying projected needs, it becomes impossible to assess any of the possible alternatives. 40 C.F.R. § 1502.14(a). Accordingly, FHWA's decision on this point cannot be upheld. 5 U.S.C. §§ 706(2)(A) and (D).

Finally, plaintiffs argue that defendants failed to take a hard look at alternatives because the final impact statement's discussion of the alternatives is too brief and conclusory. Defendants respond that a final impact statement need not provide a detailed analysis of unreasonable alternatives, 40 C.F.R. § 1502.14(a); *North Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1542–43

(11th Cir.1990). Defendants argue that the final impact statement explains why each alternative was ultimately unreasonable given the needs of the project. However, as discussed above, the final impact statement does not include sufficient information to justify the purposes and needs it identifies. Thus, this court lacks sufficient information to determine whether the alternatives were in fact unreasonable and deserved such a cursory dismissal.

In short, the final impact statement fails to provide the necessary studies (or explain why such studies were not undertaken) to justify the current and projected needs of the project. As a result, the final impact statement does not provide enough information to make a reasoned decision as to possible alternatives. Accordingly, defendants must either conduct additional studies or explain why the studies are not possible.

## B. DISCUSSION OF IMPACT

Plaintiffs' next argument is that the final impact statement fails to analyze the environmental impact of the tollroad with respect to air pollution and future development associated with the tollroad.

■ Both parties agree that a final impact statement must identify the primary and secondary environmental impact of constructing a highway. 40 C.F.R. §§ 1502.16(a)–(b), 1508.8. The final impact statement does in fact identify the environmental impact of the tollroad, including proposed land-use changes, conversion of agricultural lands, development of certain facilities, possible urban sprawl, and development of tollroad interchanges. Def. 12(M) ¶ 77. While plaintiffs are correct that defendants do not describe the impact in considerable detail, plaintiffs do not cite any authority that suggests defendants must do more than identify the potential environmental impact. The only cases plaintiffs cite involve final impact statements that completely failed to identify environmental consequences. *Coalition for Canyon Preservation v. Bowers*, 632 F.2d 774, 783 (9th Cir.1980); *City of Davis v. Coleman*, 521 F.2d 661, 675 (9th Cir.1975). Thus, the final impact statement in this

case is not analogous. Accordingly, the final impact statement's discussion of the direct and secondary impact of construction is adequate, albeit cursory. *Iowa Citizens For Environmental Quality v. Volpe*, 487 F.2d 849, 853 (8th Cir.1973).

■ Alternatively, plaintiffs argue that the final impact statement does not adequately analyze the air pollution impact of the proposed tollroad because it does not quantify the tollroad's ozone-producing effect. Indeed, an impact statement is incomplete without an analysis of the effect the tollroad will have on the production of ozone in the region. 40 C.F.R. § 1502.16. Recognizing this need, defendants respond that they have in fact conducted such an analysis. IT/SP 1–00354.

Defendants' study, however, is inadequate for two reasons. First, it was not incorporated into the final impact statement. By itself, this flaw makes defendants' analysis inadequate. *See, e.g., Sierra Club v. Marsh*, 976 F.2d 763, 770 (1st Cir.1992) (citations omitted). Failing to incorporate the study into the final impact statement deprives the public and other participants in the process of the opportunity to comment on it. *Id.*

Second, the study relies on only one socioeconomic forecast in examining the effect construction would have on ozone production. As a result, the study does not accurately depict the true ozone-producing effect construction of the tollroad would have. Accordingly, defendants must either prepare a study that explicitly compares ozone production with and without the tollroad or explain why a study is not possible. 40 C.F.R. § 1502.22. FHWA's decision, which does not provide a justification for the absence of such a study, fails to observe procedures required by law. 5 U.S.C. § 706(2)(D). Moreover, its decision in this regard was arbitrary and capricious. 5 U.S.C. § 706(2)(A).

With respect to particulate matter pollution, plaintiffs have not substantiated their claim that defendants were required to undertake a study with respect to this pollutant. Plaintiffs commit two sentences of their motion for summary judgment to this proposition but provide no support for the

argument. There is no basis to conclude that defendants' failure to undertake such a study was arbitrary or capricious.

## IV. ADEQUACY OF THE 4(F) EVALUATION

■■■ Section 4(f) of the Transportation Act prohibits the Secretary of Transportation from approving any project requiring use of a public park, recreation area or any significant historic site unless: "(1) there is no prudent and feasible alternative to using that land; and (2) the ... project includes all possible planning to minimize harm" to the protected land. 49 U.S.C. § 303. Both parties admit that section 4(f) is implicated in this case. Pl. 12(M) ¶ 42. The question is whether there are any prudent or feasible alternatives to construction of the tollroad.

Defendants argue that the final impact statement's analysis of alternatives was adequate because none of the alternatives met the transportation needs identified in the final impact statement. However, for the reasons explained above, the needs identified in the final impact statement have not been adequately justified and thus cannot serve as the basis for finding alternatives imprudent. Accordingly, the final impact statement fails to satisfy section 4(f) of the Transportation Act.

## V. REFUSAL TO RECONSIDER

Plaintiffs argue that defendants' failure to consider new information supplied in the Northeastern Illinois Planning Commission's draft report was arbitrary and capricious. This draft report indicates that the population forecast used in the final impact statement underestimated the development that would occur in the corridor as a direct result of construction of the tollroad.

As the discussion above makes clear, defendants must either provide additional studies to justify their conclusions as to ozone production and the purposes of the project or explain why such studies are not possible. That analysis would necessarily include the type of information contained in the North-

eastern Illinois Planning Commission's draft report. While that analysis need not necessarily include the information in the draft report, it must include an analysis of a similar kind or explain why an analysis is not possible.[2]

Environmental laws are not arbitrary hoops through which government agencies must jump. The environmental regulations at issue in this case are designed to ensure that the public and government agencies are well-informed about the environmental consequences of proposed actions. The environmental impact statements in this case fail in several significant respects to serve this critical purpose.

### CONCLUSION

Plaintiffs' motion for summary judgment is granted, and defendants' motion for summary judgment is denied. Judgment is entered in favor of plaintiffs Sierra Club, South Corridor Against the Tollway, Inc., Environmental Law and Policy Center of the Midwest, and Business and Professional People for the Public Interest and against defendants United States Department of Transportation, Federico Peña, Federal Highway Administration, Rodney Slater, Michael Cook, Kirk Brown, and Julian D'Esposito. Defendants are directed either to produce studies justifying their conclusions as to the proposed tollroad's purposes and as to ozone production or explain why such critical studies are not possible.

■■■■■

---

**2.** The court notes, however, that the very fact that the Northeastern Illinois Planning Commission has now developed a draft report, which

describes the sizable impact that the tollroad would have on the region, strongly suggests that such a study is possible.