138 F.3d 806
 46 ERC 1567, 28 Envtl. L. Rep. 21,047,
98 Cal. Daily Op. Serv. 1802,
98 Daily Journal D.A.R. 2511
 CITY OF LOS ANGELES, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION, Respondent,
Burbank Glendale Pasadena Airport Authority, Respondent-Intervenor.
CITY OF BURBANK, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION, Respondent,
Burbank Glendale Pasadena Airport Authority, Respondent-Intervenor.
 Nos. 96-70340, 96-70381.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 1, 1997.
Decided March 12, 1998.
 
 William L. Waterhouse, Assistant City Attorney, Los Angeles, California; Peter J. Kirsch, Cutler & Stanfield, Washington, DC, for petitioners.
 M. Alice Thurston, U.S. Department of Justice, Washington, DC, for respondent.
 Richard K. Simon, McDermott, Will & Emery, Los Angeles, California, for respondent/intervenor.
 Petitions to Review a Decision of the Federal Aviation Administration.
 Before: SCHROEDER and KOZINSKI, Circuit Judges, and WHYTE,* District Judge.
 KOZINSKI, Circuit Judge.
 
 
 1
 The Federal Aviation Administration has approved the Burbank-Glendale-Pasadena Airport's plan to double the size of its terminal. This being a "major federal action" the FAA prepared an environmental impact statement which asserts, inter alia, that building a larger terminal won't materially affect the number of people who use the airport. " '[I]f you build it, they will come,' " the appellants parry and scoff at their opponents for the " '[Air] Field of Dreams' conclusion: 'if you don't build it, they will come anyway.' " Blue brief at 5-6.
 
 
 2
 * For years the FAA and the Burbank-Glendale-Pasadena Airport Authority (the Authority) have planned to expand and modernize the Burbank-Glendale-Pasadena Airport. The federal government would help fund an expansion which would nearly double the number of gates, triple the number of parking spaces, and quadruple the size of the terminal. The project would also move the terminal, now perilously close to Runway 8.
 
 
 3
 The FAA and the Authority drafted an Environmental Impact Statement (EIS) as the National Environmental Policy Act requires, see 42 U.S.C. § 4332, and an Environmental Impact Report (EIR) as California law requires, see Cal. Pub. Res.Code § 21100. The draft versions were revised after receiving public comment, resulting in the oxymoronic Preliminary Final EIS.[1] The EIS projects that passenger demand for the Airport will grow rapidly regardless of whether the project is completed; terminal expansion will barely affect usage. The City of Los Angeles challenged this conclusion in state court. The Superior Court ordered the Authority to consider the environmental impact on the assumption that the project will cause significantly increased demand. The Authority prepared a Supplemental EIR reflecting this assumption and approved the project anyway. Satisfied, the Superior Court held that the revised EIR complies with state requirements. That decision is currently on appeal. The FAA made no similar changes in the Final EIS and issued a Record of Decision approving the project. Los Angeles and the City of Burbank appeal.
 
 II
 
 4
 When reviewing an environmental impact statement, it doesn't matter whether we agree with the agency's conclusions. Rather, the EIS acts as a procedural safeguard: Drafting a statement, one hopes, will force an agency to consider a project's effects on the environment. If the agency discusses the main environmental effects reasonably thoroughly, that's enough. See City of Carmel-by-the-Sea v. United States Dep't of Transp., 123 F.3d 1142, 1150 (9th Cir.1997). Our task is to determine whether the agency has taken a "hard look" at the environmental effects. Id. at 1151.[2]
 
 
 5
 The cities argue that, had the FAA taken a hard look it could not rationally have concluded that a larger, more convenient terminal will not attract more passengers. After all, appellants argue, airline passengers in the Los Angeles area must choose between three public airports (LAX, Burbank and Ontario). They make their decisions based on a variety of factors such as location and flight schedules; a safer, more comfortable terminal must surely attract some passengers who would otherwise use another airport.
 
 
 6
 At first glance this argument has some appeal, but on closer examination the FAA's explanation makes sense. The EIS estimates that the number of emplanements per year will grow from 1.7 million in 1990 to 5 million in 2010 whether or not the new terminal is built. Demand for an airport, says the FAA, depends much more on location, runways and ticket prices than on how nifty the terminal is. Even the number of gates, within limits, has little effect, so long as the planes can land.[3] If they can't park next to the terminal, they park farther away and passengers willingly bus back and forth.
 
 
 7
 The FAA supports its estimates with studies of other airports and its accumulated experience nationwide. The cities cite mainly common sense. Sometimes common sense may trump implausible expert claims, see City of Davis v. Coleman, 521 F.2d 661, 674-75 (9th Cir.1975), but not in a case like ours where common sense can support either conclusion.
 
 
 8
 The cities try to bolster common sense by pointing to past environmental impact statements which predicted that a bigger terminal would increase use. But an agency isn't committed to a prediction forever; the FAA was entitled to reconsider its analysis in light of new experience at Burbank and other airports.
 
 
 9
 The cities also rely on some court cases, but they are not on point. In those involving airports, the proposed plans all added runways or taxiways, among other improvements. See Citizens for the Abatement of Aircraft Noise, Inc. v. Metropolitan Washington Airports Auth., 718 F.Supp. 974 (D.D.C.1989), rev'd on other grounds, 917 F.2d 48 (1990), aff'd, 501 U.S. 252, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991); Runway 27 Coalition, Inc. v. Engen, 679 F.Supp. 95 (D.Mass.1987); Illinois ex rel. Scott v. Butterfield, 396 F.Supp. 632 (N.D.Ill.1975). Other cases involve highways and bridges, where increases in capacity more directly affect usage. See City of Davis v. Coleman, 521 F.2d 661 (9th Cir.1975); Sierra Club, Ill. Chapter v. United States Dep't of Transp., 962 F.Supp. 1037 (N.D.Ill.1997); Mullin v. Skinner, 756 F.Supp. 904 (E.D.N.C.1990). Indeed, even in the highway context we haven't always found that a new road would necessarily spur development. See Laguna Greenbelt, Inc. v. United States Dep't of Transp., 42 F.3d 517 (9th Cir.1994).
 
 
 10
 In any event, the FAA doesn't say that modernizing the terminal will have no effect on usage. If congestion in the terminal gets bad enough, some passengers might switch airports. What the FAA says is that it can't accurately predict how big this effect might be, except that it will be modest at most. See Final EIS 3-24 (1995). We don't require an agency to quantify all possible effects, particularly not those that are likely to be minor. So long as the agency reasonably explains why further quantification isn't necessary or feasible, our review is at an end. See Seattle Audubon Soc'y v. Espy, 998 F.2d 699, 704 (9th Cir.1993).
 
 
 11
 The cities also complain that the FAA hasn't adequately analyzed the noise implications of potential changed takeoff and landing patterns. For safety reasons the FAA currently won't allow large commercial aircraft to use runway 8, but the project would relocate the terminal farther from that runway. After the terminal is moved out of harm's way, the FAA will lift the ban. The cities argue that even if this doesn't result in more landings at the airport, it will cause different flight patterns, leading to more noise over some neighborhoods, and the EIS must analyze this.
 
 
 12
 The FAA did analyze what would happen if use of Runway 8 more than tripled, from 1.5% of departures to 5%. Increased use is highly unlikely due to Runway 8's length, slope, terrain and wind and air traffic patterns. Even before the FAA imposed the ban on Runway 8, the runway was used little more than now. The cities point to one study which assumed possible use much greater than the FAA assumes, but the FAA's ultimate determination is due deference.
 
 III
 
 13
 The cities also claim the project violates the Clean Air Act. Congress amended the Act in 1990 to prohibit agencies from supporting projects that don't conform with the relevant state's implementation plan. 42 U.S.C. § 7506(c). The cities argue that the terminal expansion doesn't conform.
 
 
 14
 In applying this statute the Environmental Protection Agency has grandfathered certain ongoing projects. A project is grandfathered if:
 
 
 15
 (i) Prior to January 31, 1994, an environmental analysis was commenced or a contract was awarded to develop the specific environmental analysis;
 
 
 16
 (ii) Sufficient environmental analysis is completed by March 15, 1994 so that the Federal agency may determine that the Federal action is in conformity with the specific requirements and the purposes of the applicable SIP pursuant to the agency's affirmative obligation under section 176(c) of the Clean Air Act (Act); and
 
 
 17
 (iii) A written determination of conformity under section 176(c) of the Act has been made by the Federal agency responsible for the Federal action by March 15, 1994.
 
 
 18
 40 C.F.R. § 93.150(c)(2). The FAA uncontroversially meets the first requirement, but the parties dispute the other two.
 
 
 19
 The Final EIR/Preliminary Final EIS contains a section titled "Project Review and Conformity and Regional Air Quality Plans." See Final EIR/Preliminary Final EIS 5-222. Here the FAA states the project was "in conformity with the most recent State Implementation Plan." Final EIR/Preliminary Final EIS 5-224 (1993). This is written; it determines that the project complies with the implementation plan as section 176(c) of the Act requires; and it was published before March 15, 1994. Hence, it meets requirement (iii). In addition, the document contains enough analysis to be "sufficient" under requirement (ii).
 
 
 20
 The cities point to introductory language to the regulation and distill from it a requirement that "[i]f a conformity determination has been 'completed' it means the responsible Federal agency made a final determination that a specific action conforms[.]" 58 Fed.Reg. 63216 (Nov. 30, 1993). They argue that since the determination appeared in a Preliminary Final EIS, it's not final.
 
 
 21
 We read this language as descriptive rather than mandatory; the regulation obviously meant to put all requirements in the numbered sections quoted above. But were there a finality requirement in the grandfather provisions, the determination here was final enough. There needn't be a final EIS to grandfather the project: The provisions of section 93.150(c)(2) are an alternative to section 93.150(c)(1), which provides for grandfathering where a final EIS has been completed. Had the conformity determination here been published separately, it would surely be sufficient; that it was published as part of a Preliminary Final EIS doesn't change that. The cities also argue that this conformity determination doesn't meet the publication and comment requirements of 40 C.F.R. § 93.156, but the regulations surrounding conformity determinations, including that section, don't apply to grandfathered conformity determinations-that's what it means to be grandfathered.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Which is simultaneously the Final EIR
 
 
 [2]
 The cities argue that the demand projections are a finding of fact that must be supported by substantial evidence. See 49 U.S.C. § 46110(c). However, predicting demand for the airport in 15 years is not so much a factual finding as a prognostication and it is due more deference. See Public Citizen, Inc. v. Federal Aviation Admin., 988 F.2d 186, 196 (D.C.Cir.1993). At any rate, the FAA's position would be supported even if tested under a substantial evidence standard
 
 
 [3]
 Runway capacity is important, the agency concedes, but not affected by this project